IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JUL 2 3 2024

TAMMY H. DOWNS, CLERK
By:_____
                    DEP CLERK

SANOFI-AVENTIS U.S., LLC,

    *Plaintiff,*

v.

ALAN MCCLAIN, in his official capacity as Commissioner of the Arkansas Insurance Department,

    *Defendant.*

Civil Action No. 4:24-cv-609-KGB

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff Sanofi-Aventis U.S., LLC ("Sanofi"), by and through its undersigned attorneys, alleges as follows:

## INTRODUCTION

1. This case challenges the validity of Arkansas law to the extent it requires pharmaceutical manufacturers to deliver their medicines to entities that obtain title to those drugs in violation of federal law.

2. Arkansas Act 1103 mandates that pharmaceutical manufacturers like Sanofi deliver prescription drugs steeply discounted under the federal 340B program to commercial pharmacies (known as "contract pharmacies") whenever requested by the healthcare providers entitled to receive those discounts.

3. But federal law prohibits these providers (known as "covered entities") from transferring the discounted drugs to anyone other than their patients. Instead, covered entities must maintain title over the drugs until they are dispensed to patients.

This case assigned to District Judge Baker
and to Magistrate Judge Harris

4.  While the Eighth Circuit recently held that Section 340B, 42 U.S.C. § 256b, does not preempt Arkansas Act 1103, its decision was premised in part on the assumption that covered entities would retain title to 340B-priced drugs until delivery to the patient. *See Pharm. Rsch. & Mfrs. of Am. v. McClain*, 95 F.4th 1136, 1142 (8th Cir. 2024) ("*PhRMA*").

5.  Sanofi plans to implement an initiative in Arkansas to confirm that, consistent with federal law, covered entities maintain title over 340B-priced drugs delivered to contract pharmacies. But Sanofi faces an imminent threat of enforcement under Act 1103 for this initiative. Sanofi accordingly asks this Court to hold that Act 1103 is preempted to the extent it requires Sanofi to deliver 340B-priced drugs to contract pharmacies that obtain title to those drugs in violation of federal law, and to enjoin enforcement against Sanofi for its updated integrity initiative.

## JURISDICTION AND VENUE

6.  This Court has jurisdiction over this case under 28 U.S.C. § 1331 because Sanofi's claim arises under the Supremacy Clause of the United States Constitution.

7.  This Court has the authority to grant declaratory and injunctive relief under the Declaratory Judgment Act, *see* 28 U.S.C. §§ 2201, 2202, and this Court's inherent equitable powers, including the power to enjoin actions of state officials that are contrary to the Constitution or federal law, *see Ex parte Young*, 209 U.S. 123, 159–60 (1908).

8.  Venue is proper in this district under 28 U.S.C. § 1391(b)(1) because the Defendant resides in this district.

9.  Venue is also proper in this district under 28 U.S.C. § 1391(b)(2) because this action challenges the application of an Arkansas law that purports to regulate the sale of Sanofi's products in this district.

## PARTIES

10. Plaintiff Sanofi-Aventis U.S. LLC is a global healthcare leader that produces prescription medicines and other consumer health products. Sanofi offers 340B-priced drugs to covered entities in Arkansas, including covered entities that use contract pharmacy arrangements.

11. Defendant Alan McClain is the Commissioner of the Arkansas Insurance Department ("AID"). In that role, he implements and enforces Act 1103. He is sued in his official capacity only.

## STATEMENT OF FACTS

### I. The Federal 340B Program

12. Congress established the 340B program in 1992 through amendments to the Public Health Service Act. *See* Pub. L. No. 102-585, § 602, 106 Stat. 4943, 4967–71. The 340B program is administered by the federal Health Resources and Services Administration ("HRSA"), which is an agency of the Department of Health and Human Services ("HHS"). "Under Section 340B, drug makers that want to take part in Medicare or Medicaid must offer their drugs at a discount to certain healthcare providers." *Sanofi-Aventis U.S. LLC v. U.S. Dep't of Health & Human Servs.*, 58 F.4th 696, 699 (3d Cir. 2023) (citing 42 U.S.C. §§ 256b, 1396r-8(a)(1), (5)).

13. These providers—known as "covered entities," 42 U.S.C. § 256b(a)(1), "benefit through insurance reimbursements that exceed the marked-down cost of the drugs." *Novartis Pharms. Corp. v. Johnson*, 102 F.4th 452, 455 (D.C. Cir. 2024). The markdowns are steep. The statutory discount results in drugs offered to covered entities at prices "as low as a penny per unit." *Id.* at 456. But covered entities are not required to extend those discounted prices to their patients—and instead can charge a higher price to patients (or their insurers) and profit on the spread.

14. To distribute 340B-priced drugs more broadly, covered entities sometimes contract with outside pharmacies. In 1996, HRSA issued guidance "stat[ing] that a covered entity without an in-house pharmacy may contract with a single outside pharmacy to dispense drugs at a single location." *Novartis*, 102 F.4th at 457 (citing 61 Fed. Reg. 43,549, 43,555 (Aug. 23, 1996)).

15. In 2010, HRSA revised its position, issuing guidance permitting covered entities to "contract with an unlimited number of outside pharmacies . . . regardless of whether the entities have in-house pharmacies." *Id.* (citing 75 Fed. Reg. 10,272, 10,272–73 (Mar. 5, 2010)). The result was "a significant expansion in the section 340B program." *Id.*

16. As the use of contract pharmacies skyrocketed, so too did waste and abuse in the 340B program. One form of such abuse is diversion, which occurs when covered entities "resell or otherwise transfer the drug to a person who is not a patient of the entity." 42 U.S.C. § 256b(a)(5)(B). The 340B statute prohibits diversion. *Id.*

17. As HHS has acknowledged, arrangements for the delivery of 340B-priced drugs to contract pharmacies "create complications in preventing diversion." HHS Office of Inspector General, Memorandum Report: Contract Pharmacy Arrangements in the 340B Program, OEI-05-13-00431, at 2 (Feb. 2014), https://perma.cc/6HV8-RRPQ. Bearing out this concern, a 2018 Government Accountability Office report determined that approximately two-thirds of diversion findings in HRSA audits involved drugs distributed at contract pharmacies. *See* U.S. Gov't Accountability Office, Federal Oversight of Compliance at 340B Contract Pharmacies Needs Improvement, GAO 18-480, at 38 (June 2018), https://perma.cc/4FK2-FEJP.

18. Covered entities violate Section 340B's prohibition on diversion if they transfer title to 340B-priced drugs to contract pharmacies. Complying with Section 340B's prohibition on diversion requires, among other things, that a covered entity retain title to the 340B-priced drugs

4

until they are dispensed to the covered entity's patients. *See Novartis*, 102 F.4th at 457. Indeed, the Eighth Circuit assumed that "[c]overed entities maintain legal title to the 340B drugs" when explaining why, in its view, contract pharmacy arrangements do not "extend [340B] pricing to entities which do not meet program eligibility." *PhRMA*, 95 F.4th at 1142.

19. Although HRSA permits covered entities to rely on contract pharmacies to distribute 340B-priced drugs to their patients, it has repeatedly stated that covered entities must retain title to drugs shipped to contract pharmacies to avoid violating the federal prohibition on diversion. HRSA's 1996 guidance "stressed that a covered entity, in directing shipments to its contract pharmacy, must retain title to the drugs." *Novartis*, 102 F.4th at 457; *see Notice Regarding Section 602 of the Veterans Health Care Act of 1992; Contract Pharmacy Services*, 61 Fed. Reg. 43,549, 43,553 (Aug. 23, 1996) ("1996 Guidance") (observing that a covered entity must "retain title" to drugs shipped to contract pharmacies and thus "retains responsibility for the drug[s]."). And HRSA's 2010 guidance "reiterated . . . that each covered entity must maintain title to and responsibility for the drugs." *Novartis*, 102 F.4th at 457. It described that requirement as an "essential element[]" of covered entities' compliance with the prohibition against diversion. *Notice Regarding 340B Drug Pricing Program—Contract Pharmacy Services*, 75 Fed. Reg. 10,272, 10,277 (Mar. 5, 2010) ("2010 Guidance").

**II.    Sanofi's 340B Integrity Initiative**

20. Concerned "that contract pharmacies were driving up duplicate discounting and diversion," a number of manufacturers that participate in the 340B program—Sanofi among them—have adopted program integrity initiatives in recent years. *Sanofi*, 58 F.4th at 700. These initiatives do not affect whether patients receive any medication; instead, they merely affect how

5

broadly the discounted 340B price is available for drugs delivered to pharmacies that contract with covered entities.

21.  Under the original version of its integrity initiative, Sanofi continued to offer drugs to covered entities at 340B prices for delivery to in-house pharmacies. *See id.* at 701. In addition, Sanofi would deliver discounted drugs to one designated contract pharmacy for any covered entity without an in-house pharmacy. *See id.* And Sanofi would deliver discounted drugs to an unlimited number of contract pharmacies if the covered entity provided a minimal set of claims data—a subset of the data already submitted to insurers for reimbursement. *See id.* This minimal claims data allowed Sanofi to better identify duplicate discounts (when a drug is subject to both a 340B discount and the separate Medicaid discount), which Section 340B prohibits.

22.  In response to the initiatives adopted by Sanofi and other manufacturers, HHS and HRSA took the "position that section 340B prohibits drug manufacturers from imposing any conditions on the distribution of discounted drugs to covered entities." *Novartis*, 102 F.4th at 459. The agencies declared that "Section 340B unambiguously requires drug makers to deliver 340B drugs to an unlimited number of contract pharmacies." *Sanofi*, 58 F.4th at 701. HRSA sent manufacturers, including Sanofi, enforcement letters "order[ing] them to rescind" their integrity initiatives and to "reimburse covered entities for any overcharges." *Id.*

23.  Several manufacturers, including Sanofi, filed lawsuits challenging these administrative actions. To date, two federal courts of appeals have rejected the federal government's position and held that federal law permits manufacturers' integrity initiatives, including Sanofi's. *See Novartis*, 102 F.4th 452; *Sanofi*, 58 F.4th 696. No federal court of appeals has held otherwise.

24. The Third Circuit held that Sanofi's integrity initiative and other manufacturers' similar "restrictions on delivery to contract pharmacies do not violate Section 340B." *Sanofi*, 58 F.4th at 706. The Third Circuit explained that "the text" of Section 340B "is silent about delivery." *Id.* at 703. The statute requires merely that manufacturers "offer" drugs to covered entity at a discounted price—without requiring delivery "wherever and to whomever the buyer demands." *Id.* As a result, the statute does not require "delivery to an unlimited number of contract pharmacies." *Id.* at 704.

25. The Third Circuit also rejected the federal government's argument that "drug makers may not tack on measures of their own" to existing statutory compliance measures. *Id.* at 705. It further "enjoin[ed] HHS from enforcing against" the manufacturers in that case—including Sanofi—the federal government's "reading of Section 340B as requiring delivery of discounted drugs to an unlimited number of contract pharmacies." *Id.* at 706.

26. The D.C. Circuit similarly held that "section 340B does not categorically prohibit manufacturers from imposing conditions on the distribution of covered drugs to covered entities." *Novartis*, 102 F.4th at 464. It explained that manufacturers may impose conditions on distribution unless the conditions are "onerous enough" that they "effectively increase the contract 'price.'" *Id.* at 462. The conditions at issue in that case—which included the collection of claims data— "neither preclude[d] [manufacturers] from making a bona fide 'offer'" to provide 340B drugs to covered entities "nor increase[d] its contract 'price.'" *Id.* at 464. As a result, those conditions did "not violate Section 340B on their face." *Id.*

### III. Arkansas Act 1103

27. "The Arkansas General Assembly responded" to manufacturers' program integrity initiatives "in 2021 by passing Act 1103, Ark. Code Ann. § 23-92-604(c)." *PhRMA*, 95 F.4th at 1139.

28. Act 1103 requires drug manufacturers like Sanofi to deliver 340B-priced drugs to contract pharmacies whenever requested by covered entities, which is something that federal law does not require. Ark. Code Ann. § 23-92-604(c); *see PhRMA*, 95 F.4th at 1139 ("Act 1103 prohibits manufacturers from limiting covered entities' ability to contract with outside pharmacies.").

29. As relevant here, Act 1103 provides:

> A pharmaceutical manufacturer shall not:
>
> (1) Prohibit a pharmacy from contracting or participating with an entity authorized to participate in 340B drug pricing by denying access to drugs that are manufactured by the pharmaceutical manufacturer; or
>
> (2) Deny or prohibit 340B drug pricing for an Arkansas-based community pharmacy that receives drugs purchased under a 340B drug pricing contract pharmacy arrangement with an entity authorized to participate in 340B drug pricing.

Ark. Code Ann. § 23-92-604(c).

30. The first subsection of this provision "prohibits pharmaceutical manufacturers from interfering in a covered entity's agreement with a contract pharmacy by denying the pharmacy access to a covered entity's 340B drugs." *PhRMA*, 95 F.4th at 1143. "The second subsection prohibits pharmaceutical manufacturers from interfering in a covered entity's agreement with a contract pharmacy by denying 340B drug pricing to covered entities who use contract pharmacies for distribution." *Id.*

31. Arkansas law authorizes the Insurance Commissioner to enforce Act 1103, including through the issuance of cease-and-desist orders and the imposition of fines. *See* Ark. Code Ann. §§ 23-60-108, 23-61-103(f)(1); *PhRMA*, 95 F.4th at 1144.

32. Pharmaceutical Research and Manufacturers of America ("PhRMA"), a trade association, filed an action in this District contending that Act 1103 is preempted on its face by Section 340B and invalid under the Dormant Commerce Clause. *See PhRMA v. McClain*, No. 4:21-cv-864-BRW (E.D. Ark.). The district court rejected PhRMA's preemption claim. *See* 2022 WL 18145579, at *1 (E.D. Ark. Dec. 12, 2022). (PhRMA's claim under the Dormant Commerce Clause remains pending.) The Eighth Circuit affirmed, holding that "Act 1103 is not preempted by Section 340B" because Section 340B "is silent about delivery of drugs to patients," and because Act 1103 "does not set or enforce discount pricing" but instead merely "ensures that covered entities can utilize contract pharmacies for their distribution needs." 95 F.4th at 1143–44, 1146 (internal quotation marks and citation omitted).

33. The Eighth Circuit's conclusion that federal law did not preempt Act 1103 rested on a key assumption about covered entities' relationships with contract pharmacies. The court's opinion asserted that "[c]overed entities maintain legal title to the 340B drugs" when they are acquired by contract pharmacies. *Id.* at 1142; *see also id.* at 1144 ("Covered entities purchase and maintain title to the 340B-discounted drugs[.]"). The opinion reasoned that contract pharmacy arrangements thus do not "extend [340B] pricing to entities which do not meet program eligibility"—*i.e.*, provide 340B pricing to contract pharmacies as opposed to covered entities—because a contract pharmacy simply "becomes an agent of the covered entity with the authorization to 'dispense 340B drugs to patients of the covered entity pursuant to a prescription.'" *Id.* at 1142 (quoting 61 Fed. Reg. at 43,550).

9

34. The Arkansas Insurance Commissioner began "enforcement of Act 1103" even before the Eighth Circuit issued its opinion. *See* Ark. Ins. Dep't Bulletin No. 13-2023 (Aug. 28, 2023), https://perma.cc/JQ4E-B4KW; ECF 1 Ex. B, No. 4:23-cv-969-BRW (E.D. Ark.) (AID's complaint and notice of hearing against Novo Nordisk alleging a violation of Act 1103). But the Commissioner increased AID's threats of enforcement activity after the Eighth Circuit's decision, as the Commissioner made clear both in public statements and in communications with manufacturers. *See, e.g.*, William Newton, Arkansas Enforcing 340B Contract Pharmacy Access Law Against AstraZeneca, 340B Report (May 2, 2024), https://perma.cc/ANM3-PQTE; ECF 1 ¶ 64, *AstraZeneca v. McClain*, No. 24-cv-268-BRW (E.D. Ark.) (alleging that "Defendant McClain has recently indicated that state enforcement proceedings against AstraZeneca may be forthcoming").

35. The Insurance Commissioner specifically threatened enforcement action against Sanofi following the Eighth Circuit's opinion. On March 14, 2024, Arkansas Insurance Department staff sent Sanofi a letter requesting its response to allegations that its integrity initiative violated Act 1103 by restricting covered entities' access to contract pharmacies.

36. Sanofi notified the Insurance Commissioner, through his General Counsel, that it would exempt Arkansas contract pharmacies from its existing integrity initiative, effective March 18, 2024.

37. Within hours of Sanofi providing this notification, the Insurance Commissioner's General Counsel responded to clarify the terms on which the Commissioner would forbear taking enforcement action under Act 1103. Of particular note, the Commissioner demanded that Sanofi agree not to require covered entities to submit claims data as a condition of Sanofi's offer to deliver

10

340B-priced drugs to an unlimited number of contract pharmacies. Sanofi agreed to that demand in order to avoid enforcement action in Arkansas.

38. After agreeing to the Insurance Commissioner's terms, Sanofi sent the Insurance Commissioner's General Counsel an inquiry requesting confirmation that the Commissioner would not take enforcement action against Sanofi in light of the change in policy. The Insurance Commissioner's General Counsel provided that confirmation the next day.

39. Based on its communications with the Insurance Commissioner's General Counsel regarding what would be necessary to avoid enforcement action under Act 1103, Sanofi began delivering 340B-priced drugs to all contract pharmacies in Arkansas without any conditions on March 18, 2024.

## IV. Sanofi's Updated Integrity Initiative in Arkansas

40. Although Sanofi halted its integrity initiative in Arkansas as a condition of avoiding enforcement of Act 1103, Sanofi remains committed to 340B program integrity, including the avoidance of federally prohibited drug diversion.

41. To further that objective, Sanofi has decided to adopt an updated integrity initiative in Arkansas. Sanofi intends to implement its updated initiative in Arkansas as soon as possible. But Sanofi has not yet implemented this updated initiative in Arkansas because it fears that the Insurance Commissioner will initiate enforcement action against Sanofi in response.

42. Under its updated integrity initiative, Sanofi will continue to offer 340B-priced drugs to covered entities for delivery to an unlimited number of contract pharmacies in Arkansas. However, Sanofi's offer will include a new term: a covered entity must provide evidence or attestation that it retains title to 340B-priced drugs delivered to its contract pharmacies, consistent with federal law and the Eighth Circuit's *PhRMA* decision.

11

43. Sanofi will deliver 340B-priced drugs to contract pharmacies upon such proof that the covered entity retains title, consistent with federal law. But Sanofi will not otherwise deliver 340B-priced drugs to contract pharmacies, because transferring title to contract pharmacies would violate Section 340B's prohibition on diversion. As with Sanofi's original integrity initiative, this updated initiative would not affect whether patients receive their medication, and instead would impact only how broadly the discounted price is available for drugs delivered to pharmacies that contract with covered entities.

44. Sanofi's updated integrity initiative is fully consistent with Section 340B. Section 340B permits drug makers to "tack on measures of their own" designed to address "concerns about contract pharmacies' compliance" with the statute's requirements, including its prohibition on diversion. *Sanofi*, 58 F.4th at 705. The statutory requirement "to 'offer' drugs at a certain 'price' does not prohibit distribution conditions, much less require the offeror to accede to any distribution terms demanded by the offeree." *Novartis*, 102 F.4th at 461. And Sanofi's request for evidence or attestation that the covered entity retains title to 340B-priced drugs does not "effectively increase the contract 'price'" for those drugs. *Id.* at 462. Rather, covered entities may simply provide a copy of their contracts with pharmacies (which could be redacted as needed) or attest that they maintain title to the drugs under those contracts.

45. Sanofi's updated condition is also consistent with Act 1103's delivery mandate because state law is preempted and without legal effect to the extent it mandates the unlawful diversion of Sanofi's 340B-priced drugs in Arkansas. HRSA's guidance has "stressed that a covered entity, in directing shipments to its contract pharmacy, must retain title to the drugs and thus 'be responsible' for any diversion or duplicate discounts." *Novartis*, 102 F.4th at 457; *see* 2010 Guidance at 10,277 (explaining that maintaining title is an "essential element[]" of covered

entity compliance in the 340B program); 1996 Guidance at 43,553 (observing that a covered entity must "retain title" to drugs shipped to contract pharmacies and thus "retains responsibility for the drug[s]"). To that end, the Eighth Circuit concluded that Act 1103 is consistent with federal law in part *because* "[c]overed entities maintain legal title to the 340B drugs" when they are transferred to contract pharmacies. *PhRMA*, 95 F.4th at 1142.

46. Any requirement that Sanofi deliver discounted drugs to contract pharmacies when a covered entity does not retain title to those drugs is inconsistent with Section 340B, HRSA's interpretation of the statute, and the Eighth Circuit's *PhRMA* decision.

47. Sanofi's updated integrity initiative is thus permitted by federal law, just as its prior integrity initiative was. It is also permitted under Arkansas law because Act 1103 is preempted to the extent it mandates the diversion of 340B-priced drugs in Arkansas in violation of federal law. But, as with the prior integrity initiative, Sanofi does not wish to risk a state enforcement action under Act 1103 in Arkansas as a result of its updated integrity initiative.

## V.     Sanofi's Request for Enforcement Forbearance in Arkansas

48. In order to avoid state enforcement action in the past, the Insurance Commissioner demanded that Sanofi agree not to require covered entities to submit claims data as a condition of its offer to deliver 340B-priced drugs to an unlimited number of contract pharmacies. The Insurance Commissioner's position concerning the collection of minimal claims data gave Sanofi reason to believe that he will similarly interpret Act 1103 to prohibit Sanofi's request for title information as part of its updated integrity initiative.

49. Nevertheless, because Sanofi believes that federal law preempts Arkansas law to the extent that Act 1103 prohibits the updated integrity initiative—but Sanofi also does not want to incur a risk of enforcement action—Sanofi sought to obtain confirmation that its updated

integrity initiative would not be subject to enforcement action by the Insurance Commissioner under Act 1103.

50. On July 22, 2024, Sanofi notified Insurance Department staff (including the General Counsel) of its decision to implement its updated integrity initiative in Arkansas. Sanofi requested that the Insurance Commissioner's office provide assurance that it would not pursue enforcement action premised on the position that Sanofi's updated integrity initiative violates Act 1103.

51. The Insurance Commissioner's General Counsel responded to Sanofi's inquiry almost immediately. But he failed to provide the assurance Sanofi requested, and he repeated his insistence on Sanofi's "compliance" with Arkansas law, thus reserving AID's rights to enforce Act 1103 against Sanofi because of the updated integrity initiative.

52. Sanofi accordingly seeks clarity from this Court regarding the legality of its updated integrity initiative through a declaration that federal law preempts Act 1103 as applied to its updated integrity initiative. Sanofi also seeks an order enjoining the Commissioner from enforcing Arkansas Act 1103 against its updated integrity initiative.

## STANDING

53. Sanofi faces a credible threat that the Insurance Commissioner will enforce Act 1103 against its updated integrity initiative. The Insurance Commissioner is actively enforcing Act 1103 against alleged violators. *See* Ark. Ins. Dep't Bulletin No. 13-2023 (Aug. 28, 2023), https://perma.cc/JQ4E-B4KW; ECF 1 Ex. B, No. 4:23-cv-969-BRW (E.D. Ark.) (AID's complaint and notice of hearing against Novo Nordisk alleging a violation of Act 1103).

54. The Insurance Commissioner also previously threatened to take enforcement action against Sanofi for the prior version of its integrity initiative. When Sanofi notified the Insurance

Commissioner that it would exempt Arkansas contract pharmacies from that integrity initiative to comply with Act 1103, the Commissioner's General Counsel swiftly confirmed the terms on which Sanofi could avoid enforcement action. Those terms included a prohibition on the collection of claims data from covered entities. But when Sanofi similarly notified the Insurance Commissioner of its intention to implement its updated integrity initiative to gather information relating to a different topic—covered entities' maintenance of title—the Commissioner's General Counsel provided no such assurance. There is thus a credible threat that the Insurance Commissioner will imminently enforce Act 1103 against Sanofi's updated integrity initiative.

55. But for this threat of imminent enforcement, Sanofi would implement its updated integrity initiative in Arkansas as soon as possible. Sanofi has specific and definite plans to implement its updated integrity initiative, but Sanofi has refrained from executing its plans only for fear of enforcement action, and the Insurance Commissioner has declined to disavow his intent to take enforcement action against Sanofi under Act 1103. The controversy between Sanofi and the Insurance Commissioner thus is both immediate and real, because the Insurance Commissioner is coercing Sanofi by the threat of enforcement not to implement its updated integrity initiative in Arkansas. Sanofi is not required to expose itself to enforcement action before bringing suit to challenge the validity of Act 1103 as applied to Sanofi's updated integrity initiative.

56. The penalties Sanofi would face from enforcement of Act 1103 against its updated integrity initiative are fairly traceable to the threat that the Commissioner will take enforcement action.

57. The Court would resolve this controversy with a judgment declaring that (i) federal law preempts Act 1103 to the extent the state law requires Sanofi to deliver 340B-priced drugs to contract pharmacies that take title to those drugs and (ii) Sanofi thus may implement its updated

15

integrity initiative in Arkansas. An injunction prohibiting the Insurance Commissioner from enforcing Act 1103 against Sanofi's updated integrity initiative would avert the credible threat of enforcement Sanofi now faces and allow Sanofi to implement its updated integrity initiative without fear of penalty under Arkansas law.

## CLAIM FOR RELIEF

### Count I—Declaratory Judgment

58. Sanofi incorporates the allegations in the preceding paragraphs as though set forth fully herein.

59. The Supremacy Clause of the federal Constitution provides that the "Constitution, and the Laws of the United States which shall be made in Pursuance thereof," are "the supreme Law of the Land . . . any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." U.S. Const. art VI, cl. 2.

60. The doctrine of federal preemption that follows from the Supremacy Clause requires that "any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield." *Felder v. Casey*, 487 U.S. 131, 138 (1988) (quotation omitted).

61. "It has long been established that state law that conflicts with federal law is without effect." *PhRMA*, 95 F.4th at 1140 (quotation marks omitted). "Conflict pre-emption exists where . . . the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (quotation marks omitted).

62. Federal law prohibits the diversion of 340B-priced drugs "to a person who is not a patient of the entity." 42 U.S.C. § 256b(a)(5)(B), (d)(2)(A). The federal prohibition against diversion requires, among other things, that "a covered entity, in directing shipments to its contract

pharmacy, must retain title to the drugs." *Novartis*, 102 F.4th at 457; *see also* 2010 Guidance at 10,277; 1996 Guidance at 43,553.

63. The Eighth Circuit held that Arkansas Act 1103 does not conflict with federal law based partly on the premise that "[c]overed entities maintain legal title to the 340B drugs." *PhRMA*, 95 F.4th at 1142.

64. Arkansas Act 1103 conflicts with—and is preempted by—federal law to the extent that Act 1103 permits covered entities to transfer title over 340B-priced drugs to contract pharmacies and mandates delivery in such circumstances. Permitting covered entities to transfer title over 340B-priced drugs to contract pharmacies in Arkansas conflicts with the federal prohibition on diversion, which does not permit covered entities to transfer title over 340B-priced drugs to contract pharmacies.

65. Arkansas Act 1103 stands as an obstacle to the accomplishment and execution of the federal prohibition on diversion—and is thus preempted—to the extent that Act 1103 requires Sanofi to deliver 340B-priced drugs to contract pharmacies that take title to those drugs in violation of the federal prohibition on diversion. The federal prohibition on diversion cannot be squared with a requirement under Arkansas law that Sanofi must facilitate the unlawful diversion of its own drugs.

66. Arkansas Act 1103 frustrates the federal prohibition on diversion to the extent Act 1103 prohibits Sanofi from requesting proof that covered entities maintain title over Sanofi's 340B-priced drugs delivered to contract pharmacies. Requiring proof that covered entities "maintain legal title to the 340B drugs" would help ensure that covered entities comply with the federal prohibition on diversion. *PhRMA*, 95 F.4th at 1142.

67.     Sanofi's updated integrity initiative complies with federal law because Section 340B does not prohibit Sanofi from requesting evidence or attestation that a covered entity retains title to 340B-priced drugs as a condition of its offer to deliver those drugs to contract pharmacies. *See Novartis*, 102 F.4th at 464; *Sanofi*, 58 F.4th at 703.

68.     Sanofi's updated integrity initiative complies with Arkansas Act 1103 because the state law is preempted to the extent Act 1103 permits covered entities to transfer title over 340B-priced drugs to contract pharmacies and requires Sanofi to deliver 340B-priced drugs to such contract pharmacies.

69.     Declaratory relief is appropriate in this case because there is a live case or controversy between the parties over whether Arkansas Act 1103 permits Sanofi's updated integrity initiative in light of Section 340B's ban on diversion. *See* 28 U.S.C. § 2201.

## PRAYER FOR RELIEF

Wherefore, Sanofi prays for the following relief:

1.     A declaration that Arkansas Act 1103 is preempted by federal law to the extent that Act 1103 permits covered entities to transfer title over 340B-priced drugs to contract pharmacies and requires Sanofi to deliver 340B-priced drugs to contract pharmacies that take title to those drugs in violation of the federal prohibition on diversion;

2.     A declaration that Sanofi may implement its updated integrity initiative in Arkansas because it complies with Act 1103 as preempted by federal law;

3.     An injunction prohibiting Defendant from enforcing Arkansas Act 1103 against Sanofi based on its updated integrity initiative;

4.     An award of all costs and attorneys' fees pursuant to any applicable statute or authority; and

5. Any other relief this Court deems just and proper.

Dated: July 23, 2024

Brett A. Shumate
(*pro hac vice* forthcoming)
Megan Lacy Owen
(*pro hac vice* forthcoming)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Telephone: (202) 879-3939
Facsimile: (202) 626-1700

Toni-Ann Citera
(*pro hac vice* forthcoming)
Rajeev Muttreja
(*pro hac vice* forthcoming)
JONES DAY
250 Vesey Street
New York, New York 10281
Telephone: (212) 326-3939
Facsimile: (212) 755-7306

Respectfully submitted,

*Katie Campbell*

Katherine S. Campbell, Ark. Bar No. 2013241
FRIDAY, ELDREDGE & CLARK LLP
3350 S. Pinnacle Hills Pkwy, Suite 301
Rogers, AR 72758
Telephone: (479) 695-2011
Facsimile: (501) 537-2946
kcampbell@fridayfirm.com

*Counsel for Plaintiff Sanofi-Aventis U.S. LLC*